FILED IN CHAMBERS
U.S.D.C. Rome

AUG 2 4 2007

JAMES N. HATTEN, Clerk
By: _____
                    Deputy Clerk

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

NATIONWIDE CAPITAL
CORPORATION,
a Georgia corporation,

       Plaintiff,

    v.

ADP, INC.,
a Delaware corporation,

       Defendant.

CIVIL ACTION

NO. 1:06-CV-1967-RLV

O R D E R

In this action, the plaintiff brings claims for tortious
interference with contract, tortious interference with business
relations, and punitive damages.  Pending before the court is the
defendant's Motion for Summary Judgment [Doc. No. 27-1] and the
plaintiff's Motion for Oral Argument on the Motion for Summary
Judgment [Doc. No. 48].  For the reasons set forth below, the
defendant's motion is GRANTED, and the plaintiff's motion is
DISMISSED as MOOT.

In addition to the plaintiff and the defendant, two other
entities are involved in this matter, B & Z Productions, LLC ("BZ")
and Continental Bank ("Continental").  Collectively, these entities
were involved in business transactions that give rise to the facts

1

supporting this action.

For its part, BZ developed and leased marketing systems for automotive dealers.   On May 11, 2005 the plaintiff and BZ entered into an agreement in which the plaintiff agreed to finance BZ's customer leases.  The plaintiff would license the marketing systems from BZ by paying a discounted price up front, and then customers would sublicense the systems from the plaintiff by making monthly lease payments towards the full price.  About a month later, on June 15, 2005, the plaintiff, BZ, and Continental entered into a three-party agreement, which provided that Continental would finance the plaintiff's licensing of marketing systems from BZ.

The dispute in this case arose after the defendant purchased most of BZ's assets on March 13, 2006.  Although it had originally intended to purchase all of BZ, the defendant eventually decided to purchase only most of the assets of that company.  In particular, the defendant purchased BZ's marketing system; consequently, BZ was thereafter unable to offer the plaintiff the same licensing opportunities.  The plaintiff claims that by purchasing BZ's means of performance, i.e., the marketing systems, the defendant tortiously interfered with the contracts and business relations between the plaintiff, BZ, and Continental.  The plaintiff seeks damages for lost profits from any terminated leases and from lost

future business.

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of his or her claim on which he or she bears the ultimate burden of proof. Id. at 322-23. Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by . . . affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Id. at 324. Rule 56(c) mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Id. at 322.

For both claims of tortious interference, the plaintiff bears the burden of proving four essential elements.

(1) improper action or wrongful conduct by the defendant without privilege; (2) the defendant acted purposely and

3

with malice with the intent to injure; (3) the defendant
induced a breach of contractual obligations or caused a
party or third parties to discontinue or fail to enter
into an anticipated business relationship with the
plaintiff; and (4) the defendant's tortious conduct
proximately caused damage to the plaintiff.

Kirkland v. Tamplin, 285 Ga. App. 241, 243 (2007).  The first
element, improper action or wrongful conduct, must go beyond simply
persuading someone to breach a contract.  The conduct must be
"wrongful in itself."  Id. at 244.

To support its claims, and in particular the first element of
tortious interference, the plaintiff identifies certain business
actions by the defendant that were allegedly wrongful.  [Pl.'s Br.
in Opp'n to the Mot. for Summ. J. 10-12, Doc. No. 41.]  The first
act is the defendant's attempts to have BZ seek amendments to the
licensing agreement between BZ and the plaintiff.  As proposed, the
amendments advocated by the defendant would have resulted in more
favorable conditions for the later purchase of BZ's assets.  In any
event, the plaintiff never agreed to the amendments proposed by BZ
at the behest of the defendant.  Nevertheless, the plaintiff
alleges that even requesting BZ to seek the  amendments is evidence
of improper conduct because the defendant was effectively coercing
BZ to obtain a waiver of the plaintiff's rights, which would have
rendered the plaintiff powerless to stop the purchase of all of BZ.

4

However, this act is not improper.  There is no evidence showing that the amendment the defendant wanted BZ to make to the BZ-plaintiff agreement was not legitimate business conduct.  The defendant was contemplating a purchase of BZ, and, as proposed, the amendments to the BZ-plaintiff agreement would have given the defendant more favorable conditions for its acquisition.  Such conduct is not improper in itself.  In any event, BZ was unsuccessful in its attempts to have the plaintiff agree to any amendments; therefore, the defendant's conduct in that regard, even if it were wrongful, never materialized into an actionable claim. There is no evidence showing that the defendant's alleged influence over BZ was improper or anything other than legitimate business conduct.  Persuading someone to break a contract is not wrongful on its own, Sommers Co. v. Moore, 275 Ga. App. 604, 605-06 (2005), so a failed attempt to persuade someone to amend a contract is certainly not wrongful.  Although the plaintiff alleges the act, it does not present any evidence showing how the defendant's dealings with BZ were wrongful.

The second act that the plaintiff identifies is the defendant's actual purchase of the assets from BZ and the negative effects the purchase had on the plaintiff.  Again, however, there is no evidence showing any wrongfulness or that the defendant's

purchase agreement with BZ, despite its harmful effects upon the plaintiff, was not a proper transaction. Harm that arises from the interruption of a contract or the termination of a business relationship is not relevant in determining whether an act is improper. <u>Sommers</u>, 275 Ga. App. at 605 (2005). As noted earlier, an improper act must be wrongful in itself. <u>Kirkland</u>, 285 Ga. App. at 244. In this case, even if the facts alleged by the plaintiff are true and harm arose from the defendant's purchase of BZ's assets, there is still no evidence showing why the defendant's act was wrongful. Consequently, because there is no evidence showing that either of the identified business transactions was wrongful in itself, this court concludes that the plaintiff has failed to make a showing sufficient to establish the existence of the first element of its claims.

The plaintiff argues alternatively that the defendant's conduct constitutes fraud, which itself could satisfy the improper act element for tortious interference. The allegedly fraudulent conduct is the defendant's involvement with the cancellation of certain "pipeline" deals, which were financing deals being processed by the plaintiff but were not yet final at the time of the defendant's purchase of BZ. While it is true that underlying tortious conduct, such as fraud, would constitute improper conduct

and thus satisfy the first element of a tortious interference claim, the plaintiff must still present evidence in support of the elements of the underlying fraud.   Sommers, 275 Ga. App. at 606. Under Georgia law, a claim of fraud must satisfy five elements: "(1) false representation by defendant; (2) scienter; (3) intent to induce the plaintiff to act or refrain from acting; (4) justifiable reliance by the plaintiff; and (5) damage to the plaintiff." Next Century Commc'ns Corp. Ellis, 318 F.3d 1023, 1027 (2003)(internal quotations omitted).  What the plaintiff has done here, however, is allege an underlying tort of fraud, but then it fails to show evidence supporting *all* the elements of fraud.

Specifically, the plaintiff contends that there is sufficient evidence of a false representation because the defendant's employees contacted the plaintiff "under the guise of being employees of BZ" to give notice of the cancellation of certain "pipeline" deals. [Pl.'s Br. in Opp'n, 15, Doc. No. 41.]  But that contention fails because there is no evidence in the record to show that the persons who contacted the plaintiff purporting to be employees of BZ were misrepresenting themselves as such. [See Pl.'s Br. in Opp'n, Ex. E, Doc. No. 41-2.]  That is, there is no evidence showing that those who contacted the plaintiff either were actually not employees of BZ or were not entitled to represent themselves as

employees of BZ (e.g., they were not entitled to utilize BZ's name or trademark).

The plaintiff also fails to make a showing of any damage. Asserting that it would have opposed the cancellation of the "pipeline" deals if it had known the true identity of the individuals giving notice of the cancellation, the plaintiff's own testimony, given through its president and sole shareholder, Michael Bennet, essentially admits that the cancellation of the "pipeline" deals was an option in those agreements that could be exercised by the prospective lessees as long as a cancellation fee was paid to the plaintiff.   The plaintiff also admits that the cancellation fee for each cancelled "pipeline" project was paid according to the terms of the lease.   [Pl.'s Resp. to Def.'s Statement of Undisputed Facts, Ex. A, ¶20, Doc. No. 41-2.][1]

However, the plaintiff does not show how, even if it had known the allegedly true identity of the individuals giving notice of the

---

[1]Notably, the plaintiff points out that, at least with respect to certain cancelled leases, it received the cancellation checks from the defendant and not from the prospective lessee.   In other words, the plaintiff's argument is that evidence of the defendant's fraud is shown by its payment of a third-party's penalty owed to the plaintiff.   However, the court notes that by accepting the benefits of a contract or the performance of certain rights under the contract, as the plaintiff admits, such conduct cannot subsequently serve as a basis for a claim of fraud.   See e.g., Lakeside Invs. Group, Inc. v. Allen, 253 Ga. App. 448, 451 (2002).

cancellations, it had any right to stop such cancellations.  The evidence of the lease agreements in the "pipeline" makes clear that a lessee had the contractual right to cancel, subject to payment of a cancellation fee.  Thus, the plaintiff has not shown any evidence that it was damaged due to the plaintiff's conduct because the extent of the plaintiff's action was to remit payment of a penalty fee pursuant to an admittedly properly exercised contract right by third-parties.  Moreover, as this court as already noted, any involvement by the defendant in the interruption of a contract or the termination of the plaintiff's "pipeline" deals is not relevant in determining whether an act is improper.  <u>Sommers</u>, 275 Ga. App. at 605 (2005).

Finally, the plaintiff urges this court to adopt a "totality of the circumstances" analysis to determine whether it has shown facts sufficient to establish the existence of improper action or wrongful conduct.  In so doing, the plaintiff contends that the acts of the defendant, when viewed in their totality, constitute improper conduct.  However, that particular element requires only a single "improper act or wrongful conduct."  <u>Kirkland</u>, 285 Ga. App. at 243.  The totality of circumstances analysis is too broad in scope to function as a single instance of wrongful conduct or an improper act and therefore does not satisfy the element.

Having concluded that the plaintiff fails to show evidence in support of the first essential element of tortious interference, the court need not proceed further.  Summary judgment is warranted as to the tortious interference with contract and tortious interference with business relations claims.  The claim for punitive damages is dismissed because it is only a form of recovery for certain other claims and cannot stand as a separate cause of action.  Byrne v. Nezhat, 261 F.3d 1075, 1093 n.34 (2001).  For the foregoing reasons the defendant's Motion for Summary Judgment [Doc. No. 27-1] is GRANTED, and the plaintiff's Motion for Oral Argument on the Motion for Summary Judgment [Doc. No. 48] is DISMISSED as MOOT.

SO ORDERED, this **24**ᵗʰ day of August, 2007.

ROBERT L. VINING, JR.
Senior United States District Judge

10